IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LEGEND BRIDGES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-043 |
| | ) | |
| JERMAINE WHITE, Warden; | ) | |
| CPT. FULLER, Correctional | ) | |
| Officer; SGT. MOORE, Correctional | ) | |
| Officer; CERT TEAM OFFICER WILCOX; | ) | |
| CERT TEAM OFFICER McKENZIE; and | ) | |
| CERT TEAM OFFICER GARNER, | ) | |
| | ) | |
| Defendants. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. The case originated when Plaintiff, along with a fellow inmate, submitted one complaint, dated April 19, 2022, raising allegations of mistreatment by Defendants regarding the use of O.C. spray on February 24, 2022. (Doc. no. 5, p. 6.) Recognizing the improper attempt to join multiple inmates as plaintiffs in one lawsuit, United States District Judge Dudley H. Bowen, Jr., adopted the recommendation of the undersigned to dismiss the multi-plaintiff case and directed Plaintiff and his fellow inmate to proceed in two separate cases, but allow a *nunc pro tunc* filing date of the new cases to match the date the improper, multi-plaintiff case was filed. See doc. no. 4; see also Bridges et al. v. White, CV 322-034, doc. no. 6 (S.D. Ga. May 27, 2022).

In the interim between this Court's recommendation for the two prisoner plaintiffs to proceed in separate cases and Judge Bowen's adoption of the same, Plaintiff Bridges submitted a new complaint - naming the same Defendants and describing the same events of February 24, 2022 - and motion to proceed IFP, which resulted in opening the above-captioned case. (Doc. nos. 1, 2.) Thus, Judge Bowen directed the Clerk to file the original complaint from CV 322-034, *nunc pro tunc*, to April 29, 2022, in the above case and update the docket to reflect the complaint used to commence this case is the amended complaint and operative pleading. See doc. no. 4; CV 322-034, doc. no. 6.

Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     BACKGROUND**

Plaintiff names the following defendants:  (1) Jermaine White, TSP Warden; (2) Cpt. Fuller, TSP Correctional Officer; (3) Sgt. Moore, TSP Correctional Officer; (4) Officer Wilcox, TSP CERT Team; (5) Officer McKenzie, TSP CERT Team; and (6) Officer Garner, TSP CERT Team.  (Doc. no. 1, pp. 1-2.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 24, 2022, Defendant Fuller began harassing Plaintiff during the morning inspection and threatening to use O.C. spray in Plaintiff's cell.  (Id. at 2.)  Defendant Garner opened and closed the flap on Plaintiff's cell while Defendant Moore used her O.C. spray on Plaintiff in his cell; Defendant McKenzie recorded the incident.  (Id. at 3.)  Five minutes later, Defendants Wilcox, Garner, and McKenzie escorted Plaintiff out of his cell to be examined by the nurse, but after the examination, they returned him to his still-contaminated cell.  (Id.)

Defendant Wilcox did not immediately provide Plaintiff with requested cleaning supplies for his cell. (Id.)

Plaintiff filed a grievance about the incident and filed medical requests to have his eyes examined. (Id.) Defendant White denied Plaintiff's grievance on April 26, 2022, and Plaintiff received a copy of the denial on May 5, 2022. (Id. at 4.) Plaintiff filed an appeal of the denial of his grievance on May 6, 2022, but he did not receive a response prior to signing his pleading on May 10, 2022. (Id. at 4, 6.) Plaintiff seeks monetary damages and an order that Defendant Fuller stop harassing Plaintiff. (Id. at 5.)

## II.    DISCUSSION

### A.    Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That

is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies

#### 1. The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215

4

(2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are

5

deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

### 2.     Administrative Grievance Procedure at TSP

The administrative grievance procedure is governed by the version of the Georgia DOC Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1]  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kisok/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or

---

[1]DOC policies cited herein are publicly available on the DOC web site.  See www.dcor.state.ga.us; *follow* link for Policies & Procedures and then Facilities Division; *click on* link for desired PN (last visited July 14, 2022).

if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

   3.  **Plaintiff's Failure to Exhaust**

In his amended complaint, dated May 10, 2022, Plaintiff states the Warden denied his grievance on April 26, 2022, and he received a copy of the denial on May 5, 2022; Plaintiff filed an appeal of the denial of his grievance on May 6, 2022. (Doc. no. 1, p. 4.) Failing to receive a response to the appeal in four days, Plaintiff executed and filed his pleading that launched this case. In fact, the complaint that began Plaintiff's federal proceedings, albeit improperly joined with a fellow inmate, regarding the February 24, 2022 incident in CV 322-034 was signed April 19, 2022, even before he received a response to his original grievance. Furthermore, the face of Plaintiff's pleading makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit. That is, Plaintiff improperly short-circuited the appeals process by filing his lawsuit after the passage of only four days of a 120-day period allowed for ruling on a central office appeal.

7

Allowing Plaintiff to decide for himself to bypass the appeals process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not waiting for a response to his appeal would defeat the aims of PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to

filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit.  Higginbottom, 223 F.3d at 1261.  It is plain from the face of Plaintiff's amended complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not wait for a response to his appeal.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the amended complaint fails to state a claim upon which relief can be granted.  See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

### III. CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted because he did not exhaust his administrative remedies prior to filing this lawsuit. Therefore, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** without prejudice and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 14th day of July, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA